**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BARBARA M. BRIEST,**

                            **Plaintiff,**

                    v.                        **5:07-CV-121**
                                                              **(FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                            **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OOT & STRATTON**<br>4983 Brittonfield Parkway<br>East Syracuse, New York 13057<br>Attorneys for Plaintiff | **MICHAEL P. OOT, ESQ.** |
| **SOCIAL SECURITY ADMINISTRATION**<br>**OFFICE OF REGIONAL**<br>**GENERAL COUNSEL - REGION II**<br>26 Federal Plaza - Room 3904<br>New York, New York 10278<br>Attorneys for Defendant | **SUZANNE M. HAYNES, ESQ.** |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Barbara Briest brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for Disability and Insurance Benefits ("DIB"). *See* Dkt. No. 1.

Currently before this Court are Plaintiff's and Defendant's cross-motions for judgment on the pleadings or, in the alternative, for summary judgment.

## II. BACKGROUND

Plaintiff, then fifty-two, filed an application for DIB on January 24, 2005, claiming that she had been unable to work since July 1, 1999. *See* Administrative Record ("AR") at 37. In her disability report, Plaintiff cited bipolar disorder as her disabling condition. *See id*. at 48. The Social Security Administration denied Plaintiff's claim on March 23, 2005. *See id*. at 20. Plaintiff filed a timely request for a hearing on April 4, 2005. *See id*. at 24. The hearing occurred on May 3, 2006, in Syracuse, New York, before Administrative Law Judge ("ALJ") Robert Gale. *See id*. at 177. Attorney Peter Stratton represented Plaintiff, who appeared and testified. *See id*. at 177, 179.

ALJ Gale considered the case *de novo* and issued a written decision denying Plaintiff's application on May 23, 2006. *See* AR at 9-17. In his decision, ALJ Gale made the following findings:

> 1) Plaintiff last met the insured status requirements of the Act on December 31, 2004.
> 2) Plaintiff has not engaged in substantial gainful activity at any time relevant to ALJ Gale's decision.
> 3) Plaintiff has bipolar disorder, a severe impairment. Plaintiff's obesity is not limiting to her, so it is a non-severe impairment.

> 4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.
> 5) Plaintiff has the residual functional capacity ("RFC") to perform at all exertion levels.  Plaintiff can complete simple one- or two-step tasks in a low-stress environment, defined as only occasional changes in the work setting and only occasional interaction with coworkers and supervisors.
> 6) Plaintiff is unable to perform any past relevant work.  Plaintiff's past relevant work as a restaurant cook is not characterized by a sufficiently low-stress environment.
> 7) Plaintiff was born on February 12, 1952, and was forty-seven on the alleged disability onset date; she met the definition of a younger individual, which, here, is defined as between ages forty-five and forty-nine.
> 8) Plaintiff has a limited education and can communicate in English.
> 9) Transferability of job skills is a moot issue as Plaintiff's past relevant work is unskilled.
> 10) Given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
> 11) Plaintiff has not been under a "disability" within the Act's definition of that term from July 1, 1999, through the date of the ALJ's decision.

*See id.* at 13-17.

The ALJ's decision became the Commissioner's final decision on December 1, 2006, when the Appeals Council of the Social Security Administration denied Plaintiff's request for review.  *See* AR at 5-7.  Plaintiff commenced this action on February 2, 2007, *see* Dkt. No. 1, and filed a supporting brief on December 21, 2007, *see* Dkt. No. 10.  Defendant filed a response brief on January 10, 2008.  *See* Dkt. No. 11.

### III. DISCUSSION

**A.     Standard of Review**

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

To be eligible for DIB, a claimant must show that she suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in substantial gainful activity. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in substantial gainful activity, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id.*
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, she is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her residual functional capacity, age, education, and experience. *See* 20 C.F.R.

> § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R.
> § 416.920(g). A claimant is only entitled to receive disability benefits
> if she cannot perform any alternative gainful activity. *See id.*

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater* 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B.     The ALJ's Step Three assessment**

To assess a mental impairment, an ALJ first rates the severity of functional loss in four areas: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration in work or work-like settings." *Williams v. Callahan*, 30 F. Supp. 2d 588, 594 (E.D.N.Y. 1998) (citing 20 C.F.R. § 416.920a). A five-point scale of none, mild, moderate, marked, and extreme measures the first three areas. *See* 20 C.F.R. § 416.920a(c)(4). The ALJ rates the fourth area on a scale of none, one or two, three, and four or more. *See id.* A rating at the highest point on either scale indicates a degree of limitation that is incompatible with the ability to perform gainful activity. *See id.*

Paragraph B of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 incorporates this scaled assessment of a claimant's functional loss into its requirements for what constitutes a disability. Bipolar disorder must result in two of the following: a score of "marked restriction" of activities in daily living, "marked difficulty" in social functioning, "marked difficulty" in concentration, and repeated episodes of decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B)(1-4).

If the bipolar disorder does not meet the requirements of Paragraph B, it must meet the requirements of Paragraph C. Those requirements are the existence of medical documentation that

the claimant had a chronic affective disorder for at least two years; that, because of the disorder, the claimant suffered more than a minimal limitation of ability to perform basic work activities; that the claimant currently attenuates the symptoms with medication or psychological support; and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(C).

In the instant matter, the ALJ found that Plaintiff had bipolar disorder, a severe impairment, but that the impairment did not meet the requirements of Paragraph B.  *See* AR at 13, 14.  He found that Plaintiff experienced mild restrictions of daily living, mild difficulty maintaining social functioning, moderate difficulty maintaining concentration, and "one or two decompensations of extended duration."  *See id*. at 14.  Consequently, the ALJ found that Plaintiff was not disabled at Step Three.  *See id*.

In reaching his decision with regard to Paragraph B, the ALJ neither cited medical evidence to explain his findings nor addressed contradictory medical evidence.  *See generally* AR at 9-17.  He did not explain how he arrived at the ratings of "mild difficulty" regarding daily living and social functioning and "moderate difficulty" regarding concentration.  *See id*.  He also did not explain how he arrived at his determination of one or two decompensations, where the record indicated that Plaintiff had three extensive hospitalizations within eight months and that Plaintiff

attempted suicide by overdosing prescription drugs. *See* AR at 88, 114, 123-24. Moreover, the hospital records related to Plaintiff's admissions in July and November of 2002 documented manic and depressive periods, which were necessary symptoms of bipolar disorder. *See id*. at 88, 114, *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04A(3). In addition, Dr. Patil opined that Plaintiff experienced marked restriction in maintaining social functioning and marked difficulty in maintaining concentration, persistence, and pace. *See id*. at 161-67, 170-71. Finally, Dr. Patil's reports and Plaintiff's hospital records would appear to support a finding that Plaintiff's bipolar disorder has existed for the required two years. *See generally* AR.

Alternatively, the ALJ erred because he stopped his analysis at Paragraph B. Under the regulations, he should have addressed whether Plaintiff's disorder met the criteria for Paragraph C, once he concluded that Plaintiff did not meet the criteria of Paragraph B. Given Plaintiff's long course of treatment with Dr. Patil, her hospitalizations, and her treating psychologist's opinion of her ability to handle the stress of a work environment, there appears to be substantial evidence to support a finding that Plaintiff met the criteria of Paragraph C. The ALJ did not address this possibility, however; this oversight constitutes legal error. Accordingly, the Court remands this case so that the ALJ may reevaluate whether Plaintiff meets the criteria of Paragraph B and, if not, whether Plaintiff meets the criteria of Paragraph C.

**C.    The ALJ's assignment of weight to Plaintiff's treating physician's opinion**

In cases at the ALJ level, "the ALJ generally has an affirmative duty to develop the administrative record." *Mitchell v. Astrue*, No. 07 Civ. 285, 2009 WL 3096717, *17 (S.D.N.Y.

Sept. 28, 2009) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)). To this end, the ALJ must usually develop a claimant's medical history for at least twelve months prior to the filing of an application for benefits and, additionally, must "gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423(d)(5)(B) (as incorporated by 42 U.S.C. § 1382c(a)(3)(G)); 20 C.F.R. § 416.912(d)). Specifically, the ALJ has the duty to "recontact" a treating physician for clarification if the treating physician's opinion is unclear. *See Mitchell*, 2009 WL 3096717, at *17 (citing 20 C.F.R. § 404.1512(e)) (other citation omitted).

In the normal course, an ALJ must give controlling weight to the opinion of a treating physician where it is "'supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.'" *Audi v. Astrue*, No. 07-CV-1220, 2009 WL 3199481, *13 (N.D.N.Y. Sept. 30, 2009) (quoting *Anderson v. Astrue*, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)); *see also* 20 C.F.R. § 404.1527(d)(2). If an ALJ does not give controlling weight to a treating physician's medical opinion, he must "'give good reasons'" for the weight he does accord to that opinion. *See Audi*, 2009 WL 3199481, at *13 (quotation omitted). Reasons for assigning weight to a treating physician's opinion include "'(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist.'" *Audi*, 2009 WL 3199481, at *13 (quoting *Anderson v. Astrue*, 2009 WL2824584, at *9 (E.D.N.Y. Aug. 28, 2009) (quoting *Clark v. Comm'r of Social*

*Security*, 143 F.3d 115, 118 (2d Cir. 1998))); *see also* 20 C.F.R. § 404.1527(d)(2).[1]

Here, when the ALJ decided not to give controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Patil, he did not follow the above guidelines for evaluating the opinion of a treating physician. First, the ALJ neither stated what weight he assigned to Dr. Patil's opinion nor discussed the criteria set forth in 20 C.F.R. § 404.1527(d)(2). The ALJ merely stated and repeated that Dr. Patil's treatment notes were inconsistent with his overall assessment of Plaintiff's ability to engage in gainful activity. Although consistency with the record is one of the 20 C.F.R. § 404.1527(d)(2) factors, so are the length of the treating relationship (here, several years), evidence in support of the opinion (here, hospitalization reports), and whether the physician is a specialist (here, Dr. Patil is a psychiatrist).

Furthermore, the ALJ's reasons for discounting the opinion of Dr. Patil do not appear to be very strong. The ALJ cited inconsistencies between Dr. Patil's treatment notes and his overall opinion of Plaintiff's work ability. In support of this statement, the ALJ cited to Plaintiff's testimony in which she testified to difficulties with interpersonal relations and with memory, and the fact that Dr. Patil's notes did not reflect this. *See* AR at 14-15. The ALJ also referred to Dr. Patil's assertion in his notes that Plaintiff had responded well to medication and had become more mentally stable, assuming from those notes that Plaintiff had become stable and able to work. *See id*. However, the ALJ offered no insight regarding whether stabilized bipolar disorder equaled an

---

[1] In addition, where an ALJ finds against the claimant, he must set forth the specific reasons for the weight he assigned to a treating source's opinion. *See* Social Security Ruling ("SSR") 96-2p, *5; *see also Lunan v. Apfel*, No. 98-CV-1942, 2000 WL 287988, *5 (N.D.N.Y. Mar. 10, 2000) (holding that remand was necessary because the ALJ did not discuss the weight he assigned or the reasons for assigning such weight to treating source opinions as 20 C.F.R. § 404.1527(d) requires).

ability to return to the workplace; he merely presupposed that such is the case. Moreover, the record contains no medical evidence to indicate whether the ALJ's assumption is correct.

Finally, the ALJ did not discuss what weight he assigned to Dr. Patil's or any other physician's opinions. The other treating physician reports are from Plaintiff's hospitalizations, and they support Dr. Patil's findings.[2] Importantly, the ALJ made no apparent effort to contact Dr. Patil to resolve the inconsistencies that he found between Dr. Patil's treatment notes and his overall assessment.

In sum, the ALJ failed to consider all the criteria for the assignment of non-controlling weight to a treating physician's opinion; and he did not properly develop the record. The record is unclear regarding whether Plaintiff's remission and stabilization represent an ability to return to work. The record is also unclear regarding whether, prior to stabilization, Plaintiff's bipolar disorder was of the severity and duration to constitute a disability under the Act.[3] Accordingly, the Court remands this case for further development and proper analysis of the medical record.

---

[2] The only medical report that contradicts Plaintiff's treating physician is the one that Dr. Allan Hochberg, the State agency medical consultant, prepared; and he did not treat Plaintiff. *See* AR at 144-46.

[3] Regarding the duration of Plaintiff's bipolar disorder, Plaintiff was first hospitalized in July of 2002. *See* AR at 77. She returned to the hospital in October 2002, and again in February of 2003. *See id*. at 103, 123. In September of 2003, Dr. Patil diagnosed her bipolar disorder as being in remission. *See id*. at 133. It is possible that Plaintiff's bipolar disorder was not under control, and may have been a disability, for enough time surrounding the July 2002 through September 2003 period to meet the two-year requirement.

### D. Plaintiff's RFC and ability to perform other work

Where a claimant's non-exertional impairment is a mental impairment, the ALJ considers the case on an individualized basis. *See* SSR 85-15, *4. In these instances, 20 C.F.R. sections 404.1562-404.1568, 416.962-416.968, and section 204.00 of the Medical-Vocational Guidelines provide a framework of assessment. *See id.* at *3. These sections offer the following considerations: ability to adjust to other work, age, education, prior work experience, work existing in the national economy, physical exertion requirements, and skill requirements. *See* 20 C.F.R. §§ 404.1562-404.1568, 416.962-416.968; 20 C.F.R. Part 404, Subpart P, Appendix 2 § 204.00. Using these criteria, the ALJ considers whether the claimant can meet the demands of her past relevant work and, if not, whether she can perform other work in light of her remaining mental capacity. *See* SSR 85-15, at *4.

Where a claimant's only impairment is mental and is not of listing severity, but nevertheless prevents her from meeting the mental demands of past relevant work, the ALJ must consider whether the claimant can perform unskilled work. *See id.* Furthermore, where a claimant substantially loses the ability to meet the basic demands of unskilled work, it is a severe limitation to her potential occupational base. *See id.*

In this case, the ALJ found that Plaintiff had bipolar disorder, a non-exertional limitation, but that it did not significantly narrow the range of work that Plaintiff could perform. *See* AR at 13, 16. The ALJ cited the above-listed guidelines in reference to his conclusion. *See id.* at 16. He found that Plaintiff could perform at all exertion levels and could complete simple one-to-two step

tasks in a low stress environment.[4]  *See id*. at 14.  He also set forth the guidelines regarding Plaintiff's ability to perform unskilled work and found that her occupational base was undiminished. *See id*. at 16. The ALJ reasoned that Plaintiff appeared to stabilize when she took her medications. *See id*. at 14.  Regarding the types of work Plaintiff could perform, the ALJ restated Plaintiff's assertions that she performed housework, cooked, and shopped with her husband.  *See* AR at 15. He then noted that Plaintiff had no physical impairments and that she had even indicated that her bipolar disorder had improved.  *See id*.

Although he did not specifically address each guideline separately, the ALJ appears to have considered Plaintiff's age, work skills and experience, physical abilities, and ability to perform unskilled work.  Therefore, the ALJ properly followed the regulations' guidelines for evaluating Plaintiff's work ability.  However, his findings regarding Plaintiff's work abilities rest on his decision to discount Dr. Patil's opinion.  *See id*. at 14-15.  As previously stated, it is unclear that the ALJ used the appropriate legal standard to arrive at his decision to accord less-than-controlling weight to Dr. Patil's opinion.  Accordingly, the Court remands this matter for further consideration.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **GRANTED**; and the Court further

---

[4] The ALJ defined a low-stress environment as one that is characterized by "only occasional changes in the work setting and only occasional interaction with coworkers and supervisors."  *See* AR at 14.

**ORDERS** that Defendant's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that the Commissioner's decision is **REVERSED** and the case is **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated: December 17, 2010
       Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge